KARL R. CANNON (Utah State Bar No. 6508)
*kcannon@chcpat.com*
BRETT J. DAVIS (Utah State Bar No. 7840)
*bdavis@chcpat.com*
CLAYTON, HOWARTH & CANNON, P.C.
P.O. Box 1909
Sandy, Utah  84091
Telephone: (801) 255-5335
Facsimile: (801) 255-5338

Attorneys for Plaintiff Progress Mfg. Inc.

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| PROGRESS MFG. INC., dba FASTWAY TRAILER PRODUCTS | |
| | COMPLAINT |
| Plaintiff, | |
| v. | Civil No. 15-cv-00276 |
| CEQUENT PERFORMANCE PRODUCTS, INC. | Judge Brooke C. Wells |
| Defendant. | |

Plaintiff Progress Mfg. Inc., dba Fastway Trailer Products (hereinafter "Plaintiff" or "Progress"), by and through its undersigned counsel, brings this Complaint against Defendant Cequent Performance Products, Inc. (hereinafter "Defendant" or "Cequent"), as follows:

PARTIES

1. Progress is a Utah corporation whose principal place of business is in the State of Utah.

2. Cequent is a Delaware corporation with a principal place of business in Michigan, and is the owner of U.S. Patent No. 6,722,686 ("the '686 patent").

## JURISDICTION AND VENUE

3. This is an action for Declaratory Relief under Title 28 U.S.C. §§ 2201 and 2202 adjudging the '686 patent to be invalid and not infringed by Progress.

4. This Court has jurisdiction in this case pursuant to 28 U.S.C. §§ 1331, 1332, 1338 and/or 1367.

5. Venue is proper in this District pursuant to Title 28 U.S.C. § 1391(d).

6. Upon information and belief, this Court has personal jurisdiction over Cequent by virtue of its continuous and systematic contacts with the state of Utah for a substantial period of time, including Cequent's marketing and selling its products through an extensive dealer network within the state of Utah, Cequent's bringing lawsuits in the state of Utah, and contracting with parties in the state of Utah.

## GENERAL ALLEGATIONS

7. Progress designs, manufactures and offers for sale a wide array of trailer products and accessories for trailer equipment manufacturers, wholesale-distributors, and retail markets.

8. On February 18, 2013, Progress entered into an Asset Purchase and Sale Agreement ("Asset Purchase Agreement") with Diversi-Tech Corporation, a Utah corporation ("DT").

9. Pursuant to the terms of the Asset Purchase Agreement, Progress purchased certain assets of DT related to the manufacturing of aluminum trailer hitch ball mounts and

coupler locks, including equipment and machinery, supplies and furnishings, goodwill and other intangibles.

10. Pursuant to the explicit terms of the Asset Purchase Agreement, including provision 1.3a thereof, Progress did not assume any of DT's liabilities, including any liabilities that occurred prior to the execution of the Asset Purchase Agreement.

11. Further, the Asset Purchase Agreement did not result in a merger or consolidation of Progress and DT.

12. After the purchase of the DT assets, Progress began manufacturing, marketing and selling aluminum trailer hitch ball mounts and coupler locks.

13. Prior to the execution of the Asset Purchase Agreement, Cequent, or its predecessor, initiated a lawsuit in 2005 against DT alleging infringement of the '686 patent in the U.S. District Court for the Northern District of New York, *Cequent Trailer Products, Inc. v. Diversi-Tech Corp*, Case No. 5:05-cv-00074, ("the New York action").

14. Cequent and DT settled the New York action with a written settlement agreement ("Settlement Agreement"). Pursuant to the Settlement Agreement, DT agreed to pay a lump sum amount and to pay a fixed and ongoing royalty amount for each coupler lock sold after a certain date.

15. In May of 2014, Progress received a letter dated May 7, 2014 from Cequent's attorney. The letter was addressed to DT but sent to Progress' main business office. (A true and correct copy of the letter is attached hereto as Exhibit A.) In the letter, Cequent's attorney accused DT of breaching the terms of the Settlement Agreement and demanded that DT remedy the breach by no later than May 23, 2014.

16. In response to Cequent's May 7th letter, Progress forwarded a copy of the letter to DT as the alleged debt was DT's sole responsibility under the terms of the Asset Purchase Agreement.

17. In November of 2014, Progress received a letter dated November 17, 2014 from Cequent's attorney that was addressed to Progress. (A true and correct copy of the letter is attached hereto as Exhibit B.) In this letter, Cequent's attorney indicated that DT owed a debt to Cequent arising from the Settlement Agreement and invited a discussion as to whether Progress intended to pay this debt and the ongoing royalties required by the Settlement Agreement.

18. In response to Cequent's November 17th letter, Progress informed DT about the letter as the debt was DT's sole responsibility under the terms of the Asset Purchase Agreement.

19. On or about November 21, 2014, DT filed a complaint against Cequent in Utah state court seeking recession of the Settlement Agreement on the basis that the Settlement Agreement was based upon a mistake in fact, mutual mistake, fraud, breach of the covenant of good faith and fair dealing, and unjust enrichment.

20. In a Notice of Removal filed on December 31, 2014, Cequent removed the Utah state court action to the U.S. District Court for the District of Utah in *Budge et al. v. Cequent Performance Products, Inc.*, 2:14-cv-00938 (hereinafter "Utah action").

21. On January 7, 2015, Cequent filed an Answer and Counterclaim in the Utah action. As part of its counterclaims, Cequent named Progress as a counterclaim defendant and alleged that Progress "directly infringed the '686 patent by making, importing, using, offering for sale, and/or selling coupler locks in the United States that are covered by one or more claims of the '686 patent."

22. Cequent further alleged in its counterclaims that Progress actively induced infringement of the '686 patent.

23. Cequent further alleged in its counterclaims that Progress was a contributory infringer of the '686 patent.

24. Cequent further alleged in its counterclaims that Progress' infringement "was, and continues to be, willful and deliberate."

25. Cequent further alleged in its counterclaims that Progress was liable for the debts of DT incurred under the Settlement Agreement and that Progress had breached the Settlement Agreement.

26. Progress was served with a summons and a copy of Cequent's Answer and Counterclaim on February 6, 2015.

27. On March 16, 2015 and prior to Progress filing an answer to the counterclaims in the Utah action, Cequent voluntary dismissed all of its counterclaims against Progress in the Utah action, without prejudice, in accordance with FRCP 41(a)(1)(A)(I).

28. During the interim period between the filing of Cequent's counterclaims and the voluntary dismissal, Progress presented to Cequent multiple prior art references that invalidate the claims of the '686 patent.

29. However, since the counterclaims were voluntarily dismissed without prejudice in the Utah action, Cequent is not barred from bringing a subsequent action against Progress for infringement of the '686 patent in Utah or in some other jurisdiction.

30. Cequent has not agreed that it would not bring another action against Progress in the future in regard to the '686 patent and the Settlement Agreement.

31. Thus, despite the voluntary dismissal of the counterclaims against Progress, there has arisen an actual controversy between the parties as to whether certain products manufactured by Progress infringe the '686 patent, and as to whether Progress is liable for DT's alleged breach of the Settlement Agreement.

32. Further, despite the voluntary dismissal of the counterclaims, there has also arisen an actual controversy between the parties as to whether the '686 patent is invalid and/or unenforceable under the terms of the Patent Act, 35 U.S.C. 101, et seq.

## COUNT I

### DECLARATORY ACTION FOR NON-INFRINGEMENT OF U.S. PATENT NO. 6,722,686

33. Progress incorporates by reference all of the previous allegations recited above.

34. Progress contends that none of its products directly infringe, either literally or under the doctrine of equivalents, the '686 patent.

35. Progress contends that it is not inducing infringement of the '686 patent.

36. Progress contends that it is not a contributory infringer of the '686 patent.

37. An actual controversy exists between the parties as to whether Progress is infringing the '686 patent. Progress has suffered or will suffer irreparable damage and harm unless the Court reviews the '686 patent and renders a decision on this issue.

## COUNT II

### DECLARATORY ACTION FOR INVALIDITY
### OF U.S. PATENT NO. 6,722,686

38. Progress incorporates by reference all of the previous allegations recited above.

39. There exists prior art that renders the '686 patent invalid and unenforceable under at least the provisions of the 35 U.S.C. §§ 102 and 103.

40. An actual controversy exists between the parties as to whether the '686 patent is invalid and unenforceable under 35 U.S.C. §§ 102 and 103. Progress has suffered or will suffer irreparable damage and harm unless the Court renders a decision on these issues.

## COUNT III

### DECLARATORY ACTION FOR NO SUCCESSOR LIABILITY

41. Progress is not liable for the debts and liabilities of DT under the Settlement Agreement because Progress is not a party to the Settlement Agreement.

42. Progress is not liable for the debts and liabilities of DT under the Settlement Agreement because Progress is not a successor in liability to DT because Progress never expressly or impliedly agreed to assume the debts and liabilities of DT.

43. Progress is not liable for the debts and liabilities of DT under the Settlement Agreement because Progress is not a successor in liability to DT because the purchase of DT's assets by Progress did not amount to a consolidation or merger between Progress and DT.

44. Progress is not liable for the debts and liabilities of DT under the Settlement Agreement because Progress is not a successor in liability to DT because Progress is not merely a continuation or alter ego of DT.

45. Progress is not liable for the debts and liabilities of DT under the Settlement Agreement because Progress is not a successor in liability to DT because Progress and DT did not collude together to transfer assets in a scheme to defraud Cequent.

46. Thus, an actual controversy exists between the parties as to whether Progress is liable for the debts and liabilities of DT for its alleged breach of the Settlement Agreement. Progress has suffered or will suffer irreparable damage and harm unless the Court renders a decision on these issues.

## PRAYER FOR RELIEF

1. That this Court enter a judgment finding that none of Progress' products infringe the '686 patent.

2. That this Court enter a judgment finding that the '686 patent is invalid under one or more of 35 U.S.C. §§ 102 and 103.

3. That this Court enter a judgment finding that Progress is not liable for DT's debts and liabilities incurred due to an alleged breach of the Settlement Agreement.

4. That the Court award Progress damages, including up to treble damages if called for by applicable law, costs and attorneys fees, in connection with this action.

5. That the Court award such other further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Progress hereby demands a jury trial.

DATED this 21st day of April, 2015.

/s/ Karl R. Cannon
Karl R. Cannon (USB No. 6508)
Brett J. Davis (USB No. 7840)
CLAYTON, HOWARTH & CANNON, P.C.
P.O. Box 1909
Sandy, Utah  84091
Telephone: (801) 255-5335
Facsimile: (801) 255-5338

Attorneys for Plaintiff

S:\CHC Files\T12--\T129--\T12974\H\Complaint.wpd

## VERIFICATION OF COMPLAINT

I, Jed Anderson, am the President of Plaintiff Progress Mfg. Inc., and I do hereby say the facts and allegations contained herein are true, except so far as they are stated to be on information, and that, so far as they are therein stated to be on information, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 21st day of April, 2015

_____
Jed Anderson, President, Progress Mfg. Inc.

# EXHIBIT A

**McDonald Hopkins**
A business advisory and advocacy law firm®

McDonald Hopkins LLC
600 Superior Avenue, East
Suite 2100
Cleveland, OH 44114

P 1.216.348.5400
F 1.216.348.5474

Direct Dial: 216.430.2036
E-mail: dcupar@mcdonaldhopkins.com

May 7, 2014

**Via U.S. Express Mail**

Diversi-Tech Corp.
533 South 500 West
Provo, UT 84601

Re:     **Breach of Settlement Agreement with Cequent**

Dear Sir or Madam:

I represent Cequent Performance Products, Inc., which is successor-in-interest to Cequent Trailer Products, Inc. On June 26, 2008, Cequent and Diversi-Tech Corp. entered into a settlement agreement that resolved Cequent's lawsuit against Diversi-Tech in the U.S. District Court for the Northern District of New York (the "Agreement"). A copy of the Agreement is enclosed for your reference. I write because Diversi-Tech has breached, and continues to breach, several important terms of the Agreement, including its payment and accounting obligations.

Diversi-Tech's payment obligations are simple. Section 1.1 of the Agreement required Diversi-Tech to pay $60,000 to Cequent by June 26, 2009. Section 1.2 required Diversi-Tech to pay Cequent $1.50 for each coupler lock that it sold in excess of 30,000 units between June 26, 2008, and June 26, 2009. And Section 1.3 requires Diversi-Tech to pay Cequent $1.50 for each coupler lock that it sells after June 26, 2009, on a biannual basis.

Diversi-Tech's accounting obligations are equally as simple. Section 1.4 requires Diversi-Tech to provide Cequent with "an accurate accounting of the number of coupler lock units sold during the previous accounting half-year" on June 1 and December 1 of each year.

To date, Diversi-Tech has paid Cequent only $28,000, and it has never provided any accounting or royalty payments to Cequent. Meanwhile, Diversi-Tech continues to advertise its coupler locks for sale on its website at www.diversi-tech.net and to sell those locks through online retailers, including trailerhitchsource.com and etrailer.com.

Diversi-Tech, therefore, is in material breach of its payment and accounting obligations. Those breaches entitle Cequent to immediately recover all monies owed, as well as its damages and legal costs, from Diversi-Tech and from Angela Budge, who personally guaranteed Diversi-Tech's payment obligations. To resolve this matter short of litigation, Cequent demands that Diversi-Tech do the following by no later than ***May 23, 2014***:

Diversi-Tech Corp.
May 7, 2014
Page 2

1. Pay Cequent $32,000 plus statutory interest.

2. Provide a full written accounting of all coupler lock units that Diversi-Tech sold between June 26, 2008, and June 26, 2009, and pay Cequent $1.50 (plus statutory interest) for every coupler lock that Diversi-Tech sold beyond 30,000 units.

3. Provide a full written accounting of all coupler lock units that Diversi-Tech has sold since June 26, 2009, and pay Cequent $1.50 (plus statutory interest) for each unit.

4. Confirm in writing that Ms. Budge has "has and will continue to have assets without any liens or encumbrances of at least sixty-thousand dollars ($60,000) in her name" as required by her personal guaranty, and identify specifically what constitutes those assets and where they are located.

5. Confirm in writing that Diversi-Tech will immediately cease and desist from selling, offering to sell, or otherwise marketing all coupler lock units, and certify in writing that all coupler locks in inventory or on-order have been or will be destroyed.

Cequent takes this matter very seriously, and will have no choice but to consider other legal means for obtaining relief if Diversi-Tech does not comply with the above demands.

Sincerely,

David B. Cupar

Enclosure

{4864155:}



# EXHIBIT B

**McDonald Hopkins**

A business advisory and advocacy law firm®

McDonald Hopkins LLC
600 Superior Avenue, East
Suite 2100
Cleveland, OH 44114

P 1.216.348.5400
F 1.216.348.5474

Direct Dial: 216.430.2036
E-mail: dcupar@mcdonaldhopkins.com

November 17, 2014

**Via U.S. Express Mail**

Progress Mfg., Inc.
533 S. 500 W.
Provo, UT 84601

Re:  **Diversi-Tech's Settlement Agreement with Cequent**

Dear Sir or Madam:

I represent Cequent Performance Products, Inc., and write to advise you of a debt that Diversi-Tech owes to Cequent. According to Progress Mfg., Inc.'s website, it acquired Diversi-Tech Corp in 2013. Therefore, Progress is now liable to Cequent for the Diversi-Tech debt.

The debt arises from a settlement of a 2005 lawsuit in which Cequent sued Diversi-Tech for patent infringement in the U.S. District Court for the Northern District of New York. The case is entitled *Cequent Trailer Products, Inc. v. Diversi-Tech Corp.*, Case No. 5:05-cv-00074. There, Cequent alleged that Diversi-Tech's universal coupler lock infringes Cequent's U.S. Patent No. 6,722,686. Cequent and Diversi-Tech settled that case with a written settlement agreement (the "Agreement"), a copy of which is enclosed for your reference.

The Agreement obligated Diversi-Tech to: (i) pay $60,000 to Cequent by June 26, 2009; (ii) pay Cequent $1.50 for each coupler lock that it sold in excess of 30,000 units between June 26, 2008, and June 26, 2009; and (iii) pay Cequent $1.50 for each coupler lock that it sells after June 26, 2009, on a biannual basis. To date, Diversi-Tech has paid Cequent only $28,000 of the $60,000 initial payment, and it has never provided any of the $1.50 per unit royalty payments. Meanwhile, Diversi-Tech has continued to advertise and sell the universal coupler locks on its website at www.fastwaytrailer.com and through online retailers, including etrailer.com.

In May 2014, we wrote to Diversi-Tech's previous owners and management, Angela and Paul Budge, demanding they satisfy the debt, but they ignored our letters. Please have Progress' attorney call or write immediately, and by no later than November 31, 2014, to discuss whether Progress Mfg. intends to pay this debt and the ongoing royalties required by the Agreement.

Sincerely,

David B. Cupar
Enclosure

{5220465:}   Chicago  |  Cleveland  |  Columbus  |  Detroit  |  Miami  |  West Palm Beach

www.mcdonaldhopkins.com